## M. D. PAYNE v. THE STATE.

No. 7088. Decided November 1, 1922.

Rehearing granted March 7, 1923.

**1.—Intoxicating Liquor—Possession—Disqualification of Judge.**

Article 617 C. C. P. contains an enumeration of the things which disqualify a judge from sitting in any case, and the grounds appearing in the motion in the instant case not being named in such statute, the motion was correctly overruled.

**2.—Same—Bill of Exceptions—Practice on Appeal.**

Where the bills of exception are marked refused with the statement and qualification by the trial Court, which is verified by the official stenographer, that no objection of any kind was made to the testimony set out in said refused bills of exception, the same cannot be considered on appeal.

**3.—Same—Bills of Exception—Practice in Trial Court—Rule Stated.**

This Court has often stated that attorneys may not sit quietly by and allow objectionable testimony to be introduced without stating some objection, and in such case it is too late to make the objection after the testimony is before the jury. Held, that none of the bills of exception as they appear in the record show any error.

**4.—Same—Practice in Trial Court—Bill of Exception.**

The reason, as claimed by the attorney, that they took no more specific objection, was that the Court below had repeatedly told them that in each and every case, where defendant objected to the admission of any testimony, the Court would allow a full bill of exceptions, etc. Held, that such practice leads to confusion and trouble, and the Court should at least require that objections should be made, when testimony is offered.

**5.—Same—Rehearing—Evidence—Hearsay Evidence.**

Where, upon trial of unlawfully possessing intoxicating liquor for the purpose of sale, state's counsel asked a witness for the defendant; "I will ask you if just prior to that, you and this defendant's boy did not come down here and threaten Mattie Cleveland (the State's witness) and tried to make her leave, and not appear before the grand jury." To which the witness answered: "I was there, but wasn't there for that purpose; no connection of defendant having been shown therewith, and his son not having testified, the same was reversible error.

Appeal from the District Court of Jones. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of unlawfully possessing intoxicating liquor for purpose of sale; penalty, three years in the penitentiary.

The opinion states the case.

*Lon A. Brooks* and *Joe A. Farrow,* for appellant.—On question of testimony of witness McKennon: Nader v. State, 219 S. W. Rep., 474 cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Jones County of possessing intoxicating liquor for the purpose of sale, and his punishment fixed at three years in the penitentiary.

A motion was made to disqualify Hon. W. R. Chapman, the district judge who tried this case, but same was overruled and this action is made the subject of a bill of exceptions. Article 617 of our Code of Criminal Procedure contains an enumeration of those things which will disqualify a judge from sitting in any case. The grounds appearing in the motion in the instant case are not named in said statute. It was set up that the offense was alleged to have been committed upon a farm belonging to Judge Chapman and that he and his wife were present on the day of the alleged commission thereof, and that his wife was a witness in said case, and that the judge himself was cognizant of the facts. Judge Chapman did not testify in the case. As stated above, none of the statutory grounds of disqualification were made to appear. The motion was properly overruled.

The first bill of exceptions in the record complains of a question by the State to McKennon, a witness for appellant, the question and answer being as follows:

"I will ask you if just prior to that, you and this defendant's boy didn't come down here and threaten Mattie Cleveland and try to make her leave and not appear before the grand jury? To which the witness was permitted to answer, over the objection of the defendant: 'I was there but wasn't there for that purpose.' "

The question is addressed to a matter which would be inadmissible without a showing of some connection of appellant with the mission and message of the witness, but the answer given and set out in said bill of exceptions only states the presence of the witness at Mattie Cleveland's place, and denies the purpose and statements which if in testimony would have been hurtful and would have rendered said testimony incompetent. The witness having so answered, the bill of exceptions presents no error.

Appellant's next bill of exceptions was refused by the court, who himself prepared and filed in lieu thereof a bill, the correctness of which is attested both by the court and the official court stenographer.

The bill approved by the court sets out at length the testimony of a witness, at the conclusion of which it is stated that appellant said he objected to the testimony, to which the court replied the objection is overruled, and it is stated that appellant's attorneys said "we except." Appellant's next bill of exceptions is marked refused with the statement and qualification by the trial court, which it verified by the official stenographer, that no objection of any kind was made to the testimony set out in said refused bill.

Appellant's next three bills of exception are identical and are also marked refused by the trial court, and in lieu thereof the court below files a stenographic report of the testimony in question and answer form of the witness which is complained of, at the end of which testimony appears an objection by appellant which was sustained by the court as to the last question asked before said objection was made. There then appears a statement by appellant of an objection as follows:

"Mr. Farrow: We object also to the fact that young Payne or anyone else except the defendant himself, if they have established the fact that he did, we submit it without objection, but we have——."

This court has often stated that attorneys may not sit quietly by and allow objectionable testimony to be introduced without stating some objection. In such case it is too late to make the objection after the testimony is before the jury. None of said three bills as same appear in the record show error. There also appears relative to said bills of exception, the affidavits of appellant's attorneys in which it is substantially stated that they made no specific and detailed objection to the matters complained of in said bills of exception, only stating to the court that they objected to the testimony; that the reason they took no more specific objection was that the court below had repeatedly told them that in each and every case where appellant objected to the admission of any testimony the court would allow a full bill of exceptions and would permit the affiants to incorporate in such bill of exceptions any and all objections to the admission of the testimony.

Practice such as indicated in these affidavits could seem but to lead to confusion and trouble, but in any event such action and statements of the trial court would seem to require of the accused that when the testimony was offered which was deemed undesirable, an objection should then be stated. The course pursued in each of the three bills above mentioned, as indicated by the stenographer's notes, to the correctness of which he certifies, was that after the objectionable evidence was before the jury appellant's counsel then said that he objected thereto. This would hardly seem to come within the broad promise of the trial court contended for by appellant's attorneys. We observe that the only safe rule is that one which has the approval of experience and judgment and in consonance with the statute, that is, that when an objection is made to such matters as are deemed hurtful, if it is not desired to then fully state the grounds of objection, that

there should be made and reduced to writing or taken down by the stenographer some memorandum of the agreement between the court and counsel that the grounds of objection may thereafter be more fully stated to the particular matter. In all our courts of felony jurisdiction we now have official court stenographers who should make stenographic record of each question asked, each objection made, and each ruling of the trial court or agreement relative thereto, and it appears to us that there could be little room for dispute as to just what was said and done in any given case.

As we understand the record before us the objections made were not made until after the matter objected to was before the jury, and also that when the bills of exception referring to same were presented to the trial court, it appearing therefrom that all these matters were objected to properly and the objections overruled, the trial court declined to approve said bills of exception. It is stated in the affidavits of one of appellant's counsel that the court told him that he wanted to examine the stenographic notes before taking action on said bills, and that if he could not approve them in the form in which they were presented to him, he would simply mark them refused and would prepare bills of exception and have same filed in this cause. This course seems from the record to have been followed by the trial judge. Each of the three original bills are in the record marked refused and are accompanied by bills in lieu thereof prepared by the trial court, the correctness of which latter are certified to by the official stenographer as reflecting the facts as they actually took place.

We have expressed our views in other cases of the refusal of the trial courts to permit the taking of bills of exception at the time the matter objected to took place, but the instant case does not seem to us to fall fairly within that criticism. The assurance of the trial court that counsel need not fully state his objections but that upon the noting of an objection this would carry with it the right to thereafter amplify same, which is the substance of the affidavits as we understand them, could not be extended to cover a case in which no objection was made when the objectionable question was asked and the answer given, but to which objection was only made later in the course of the trial. Under the agreement with the court as stated in the affidavits, we take it that counsel should have stated when the question was asked that he had an objection thereto. The trial court would then have been given the opportunity to sustain or overrule such objection. If no objection was made until after the question was asked and the answer given, we can not understand how the trial court could have been able to perceive that the matter was deemed objectionable. Controversies over records on appeal are most deeply regretted by us, and we are sure, by those concerned. We can only take such course as seems in consonance with the law and justice. The bills of exception as approved by the trial court, as stated above, present no error. They

were filed in time. No bystanders bills, such as are contemplated by statute, were filed. The affidavits filed do not sufficiently evidence a refusal of the trial court to allow the taking of bills of exceptions presenting the matters complained of.

It is urged that the evidence does not sustain a conviction. There seems no controversy of the fact that on the day of the alleged possession for purposes of sale of the intoxicating liquor, such liquor was found in appellant's car. We find in the record the testimony of a witness who was in the same field with appellant on the day in question, under the influence of liquor. Said witness testified as follows:

"I had been drinking whisky when Mr. and Mrs. Chapman came up; I might have been able to walk if I had tried, I didn't try. I guess that was pretty good whisky. It looked like that whisky there, that looks just like it. I got the bucket for him to put the whisky in. I first asked Mr. Payne to sell me some whisky and he said he didn't sell whisky, he said he could give it to Mr. McKennon and there was a bucket laying down there in the turn row and they says they couldn't pour it in a bottle without wasting it and I says I can get a bucket and you can pour it in the bucket and then pour it in the bottle. I got a bucket and then they poured that whisky into the bucket and bent it so you could pour it in the bottle; they poured it out of the fruit jar into the bucket and out of the bucket into a bottle. I then gave Mr. McKennon two dollars and a quarter. After they poured the whisky out of the jar I guess they left the jar in the car; it was in the automobile at that time; I saw Mr. Payne get it out of the automobile when he poured it in the bucket."

It might be contended that this evidence showed a refusal in words on the part of appellant to sell to witness the liquor in question, but if we understand the language used and the law applicable thereto, it sets forth facts showing appellant to be in possession of liquor which he was willing to turn over to another party to dispose of in his presence and in each step necessary to transfer the possession of which appellant was a participant. The fact that another party claimed the liquor as his was for the jury and they have decided it adversely to appellant. Appellant's witness McKennon, who said the liquor was his, said he got it from Henry Giles. The State put Giles on the stand in rebuttal and he denied having sold or given the liquor to McKennon. We are unable to agree to appellant's contention regarding the facts.

Having thus disposed of each of the matters appearing in the record and finding no error therein, an affirmance is ordered.

*Affirmed.*

ON REHEARING

March 7, 1923.

MORROW, PRESIDING JUDGE.—State's counsel asked a witness for the appellant the following question:

"I will ask you if just prior to that, you and this defendant's boy didn't come down here and threaten Mattie Cleveland and try to make her leave and not appear before the grand jury?" To which the witness was permitted to answer, over the objection of the defendant: "I was there but wasn't there for that purpose."

Subsequently, when the witness Giles was on the witness-stand, counsel for the State made of him this inquiry:

Q. Henry, did Mr. McKennon and the defendant's boy, young Payne, come down to your house one night just before the Grand Jury convened? A. Yes, sir. Q. And talk to your wife, Mattie? A. They talked to Mattie. Q. She is not your wife? A. No, sir. Q. Your wife is Emma? A. No, sir; I ain't married, my wife is in East Texas. Q. Was you down there when they talked to Mattie? A. Yes, sir. Q. What did they tell or say to Mattie about her not appearing before the Grand Jury? A. I don't know exactly what they told her, they offered to send her home. Q. When was that in reference to when the Grand Jury met? A. Friday night before the Grand Jury met? Q. Friday night before the Grand Jury met on Monday? A. Yes, sir. Q. They tried to get her to leave? A. Yes, sir. Q. What else did they say to Mattie, if anything, about if she testified— A. Said anybody testified against him or his father they was going to kill them. Q. Did this young Payne and two negroes then come back to your house just about the time the Grand Jury adjourned? A. Yes, sir. The last time? Q. The last time? A. Yes, sir. Q. Did the three come there— MR. FARROW: If the court please, we object to that. THE COURT: The objection will be sustained to that last. MR. FARROW: We object also to the fact that young Payne or anyone else except the defendant himself, if they have established the fact that he did, we submit it without objection, but we have— THE COURT: Anything that was said by the defendant. The objection as made is overruled.

Predicated upon this procedure, the appellant presented a bill of exceptions to the introduction of the testimony or evidence to the effect that McKennon and appellant's boy came to his house just before the grand jury convened and talked to Mattie, and that they offered to send her home; that this was on Friday before the grand jury met on Monday. The court declined to approve the bill but had the stenographer copy his notes on the subject, which have been set out above.

The proceeding is somewhat confusing and leaves us in doubt as to whether we have a clear comprehension of the ruling of the court. We gather from it, however, that there was gotten before the jury, from the testimony of the witness Giles, that appellant's son had threatened to kill a witness if she gave testimony against the appellant and had by that means endeavored to prevent her attendance before the grand jury or at the trial, and that appellant's counsel desired that this evidence be kept from the jury. Apparently, the court adhered to his

original ruling made when the witness McKennon was on the witness-stand. The ruling made at that time doubtless encouraged State's counsel to renew the same inquiry while Giles was on the stand, and possibly counsel for appellant, knowing that the court had made his decision that the question propounded to McKennon called for legiti-· mate evidence, was deterred from making a prompt objection, the question propounded to Giles calling for the same facts. The testimony called for in the question to McKennon and apparently admitted in response to the question to Giles was obnoxious to the established rules of evidence looking to a fair trial upon behalf of one accused of crime, and has been settled by numerous cases which are collated in Branch's Ann. Tex. P. C., Sec. 861, supplemented by many of later date, notably Nader v. State, 86 Texas Crim. Rep., 432; where the subject was reviewed and the rule applied; and to the same effect is the case of Coleman v. State, 90 Texas Crim. Rep., 297.

The answer of the witness was permitted in these words: "I was there but wasn't there for that purpose." This answer was evasive and probably gave the jury to understand that *the question spoke the truth.* The procedure reflected by the bill relating to the occurrence while the witness Giles was testifying, cannot and perhaps should not be disassociated from that taking place while McKennon was testifying. Viewed in this light, it is obvious that hurtful and illegal testimony against the appellant went to the jury. This testimony was ruled admissible by the court when McKennon was testifying; and counsel for appellant was not willing that it should be used against the appellant.

The facts and the case are closely contested. Much reliance is put upon the testimony of the witness Mattie Cleveland, who gave damaging testimony against the appellant, which he controverted. The State fortified her testimony and discredited the appellant by proving that his son had threatened her and tried to prevent her from going before the grand jury. The son was not a witness and there was not an iota of the evidence connecting appellant with the acts of his son. We think the ruling of the trial court in refusing to sustain appellant's objection to the question propounded to the witness McKennon under the circumstances revealed, he being concededly in error, was, especially when considered in connection with the subsequent procedure referred to,. of a nature calculated to injure the appellant.

The motion for rehearing should be granted, the affirmance set aside, the judgment reversed and the cause remanded, and such is ordered.

*Reversed and remanded.*