**David LONDON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1004–84.**

Court of Criminal Appeals of Texas.

Nov. 12, 1987.

Fred McLeroy, William H. Alberts, Austin, for appellant.

James L. Chapman, Former Dist. Atty., J. Frank Long, Dist. Atty., and Kevin L. Henry, Asst. Dist. Atty., Sulphur Springs, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The record reflects that prior to this case going to the jury, the State, through the District Attorney, elected "to go on Count Two of the indictment in Cause Number 10,288." The jury was only charged on that count of the indictment, which was unnumbered. The jury found appellant guilty of that count of the indictment, which alleged in pertinent part as follows:

And the aforesaid Grand Jurors do further present to the aforesaid Court upon their aforesaid oaths that *the Defendant* did in Hopkins County, Texas, on or about the 1st day of June, 1982, and before the presentment of this indictment, knowingly and intentionally unlawfully appropriate property, by bringing about a transfer and purported transfer of title and other nonpossessory interest in said property and by acquiring and otherwise exercising control over said property, namely: five head of cattle, that is three cows and two steers, under the value of $10,000, with intent to deprive Ed Furrh, the owner, of said property, and without the effective consent of said owner. (Our emphasis.)

As easily seen, other than stating "the Defendant", count two of the indictment does not expressly name who "the Defendant" might have been. When the State dismissed unnumbered count one of the indictment, this left the indictment without the personal name of anyone, much less appellant, David London.[1]

The Texarkana Court of Appeals, in an unpublished opinion, see *London v. State*, (Tex.App.–6th No. 6–83–110–CR, July 17, 1984), rejected appellant's contention that the indictment was fundamentally defective because it failed to expressly name who "the defendant" was, and held: "We hold although his name is not repeated wherever the word defendant is used in the indictment, it names David London by reference." The court of appeals reasoned that because appellant never complained about being referred to by name as "the Defendant" he waived his complaint to the indictment.

The court of appeals also rejected appellant's complaint that the trial court erred in permitting the State to prove that a defense witness's brother had been previously convicted of a crime.

We granted appellant's petition for discretionary review in order to make the determination whether the court of appeals correctly decided appellant's above contentions. We find that it reached the right decision, but for the wrong reasons, as to appellant's first contention, but erred in overruling appellant's second contention. We will reverse its judgment and remand the cause to the trial court.

In rejecting appellant's first contention, that the indictment was fundamentally defective because it failed to specifically name him as the accused person, the court of appeals stated and held the following: "The purpose of naming the accused is for his identification. It is a matter of form which can be altered at the accused's election. Therefore, since London [appellant] allowed this form of name, ['the Defendant'], to remain in the indictment, he cannot now complain unless there is a defect that prejudices his substantial rights. *Jones v. State*, 504 S.W.2d 442 (Tex.Cr.App.1974). The complaint London makes is an excep-

---

1. After the jury found appellant guilty of the charged offense, it assessed his punishment at 10 years' confinement in the Department of Corrections.

tion as to form and cannot be raised for the first time on appeal. *Stribling v. State,* 542 S.W.2d 418 (Tex.Cr.App.1976). Since London did not suggest at arraignment that he was not properly identified, we consider that his name is truly set forth. Tex. Code Crim.Proc.Ann. art. 26.07 (Vernon 1966). The indictment is not defective; but, if it were, London failed to preserve his error by objection."

It is axiomatic that an indictment that fails to allege all of the elements of the offense is fundamentally defective and will not support a conviction. Article 21.02, 4., V.A.C.C.P., expressly provides that one of the requisites of an indictment is that "It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him." The requisites for an information are identical to those for an indictment. See Article 21.21, V.A.C.C.P. In *Patterson v. State,* 162 Tex.Cr.R. 535, 287 S.W.2d 949 (1956), this Court was confronted with an information that failed to specifically state the real name of the accused, or any other person for that matter, as having been the person who committed the alleged offense, nor did it allege that the name of the accused person was unknown. This Court held that the information was insufficient to allege an offense against the defendant and reversed and remanded the cause to the trial court. In *Erwin v. State,* 325 S.W.2d 148 (Tex.Cr.App.1959), after finding that the information in that cause "charges no one with the sale of whiskey, the place for the name of the accused being blank", this Court ordered the information dismissed.

There is no dispute that when unnumbered count one was dismissed on motion of the State, see *ante,* this actually left the indictment in such a state that it failed to allege the name of any person, other than "the Defendant", who was accused of committing the offense. In *Smith v. State,* 571 S.W.2d 917, 919 (Tex.Cr.App.1978), this Court pointed out that "Each count of the indictment must definitely charge the commission of a distinct offense. *Square v. State,* 145 Tex.Cr.R. 219, 167 S.W.2d 192,

193 (1942); *Powell v. State,* 42 Tex.Cr.R. 12, 57 S.W. 95 (1900)."

It would thus appear that the dismissal of count one of the indictment causes the indictment to be fundamentally defective for failure to contain appellant's name as the person who was accused of committing the theft of livestock from Furrh.

However, in *Manovitch v. State,* 50 Tex. Cr.R. 260, 96 S.W. 1 (1906), this Court implicitly held that that even though a count of the indictment is dismissed, it may still be looked to, to supply, if necessary, any of the required requisites of an indictment. See Art. 21.02, supra. It was expressly held that although the count had been dismissed it could still be looked to to supply the date and venue of the offense. Also see the discussion found in this Court's predecessor's decision of *Morgan v. State,* 31 Tex.Cr.R. 1, 18 S.W. 647 (App. 1892). We find such reasoning applicable to this cause.

The term "defendant" is usually defined to mean the following: "The person defending or denying; the party against whom relief or recovery is sought in an action or suit or the accused in a criminal case." *Black's Law Dictionary* 377 (1959 edition). Thus, when used in an indictment, the term "the defendant" is merely a shorthand rendition for the name of the accused person which must, under Art. 21.-02, supra, be stated in the indictment.

■ Although count one of the indictment was dismissed, it could still be looked to in order to satisfy the requirement of naming appellant as the person who allegedly committed the theft of Furrh's livestock. See *Manovitch,* supra. Count one expressly alleges that "David London, hereinafter styled Defendant," was the person who was accused of stealing Furrh's three cows and two steers. The count of the indictment on which the jury found appellant guilty was therefore not deficient.

The court of appeals correctly overruled appellant's contention to the contrary, but did so for the wrong reasons.

We next decide whether the court of appeals correctly held that the trial judge did not err in allowing the State to prove that a defense witness's brother had been previously convicted of a crime, placed on probation, and was presently in jail pursuant to a motion to revoke his probation that had been filed by the then District Attorney who prosecuted appellant's cause.

We find that under the circumstances of this case the court of appeals erred in sustaining the trial judge's decision to admit this testimony before the jury, and will reverse its judgment and remand this cause to the trial court for this reason.

Appellant was charged with theft of five head of cattle, three cows and two steers, that belonged to Ed Furrh, who actually had either eight or nine head of cattle stolen from him. The State's evidence established that appellant brought five head of cattle to an auction barn in Sulphur Springs on June 2, 1982 where they were sold. However, the State did not prove what it alleged but only proved that one of the five animals alleged to have been stolen was a steer and one was a cow. Appellant was shown to have deposited checks that came from the sale of the five animals that he had brought to the auction to his personal bank account. The evidence also established that appellant might have committed the offense in order to obtain money so that he could pay off his bookie on a large football bet that he had made and lost.

Appellant's defense to the accusation was alibi. Kelly Kirkpatrick testified she telephoned and spoke with appellant at his office in Austin, which testimony contradicted the notion that he was at the auction barn on the day in question. Another witness also testified that appellant was in Austin the day before as well as the day when the animals were sold.

Over objection, the State was permitted to impeach Kirkpatrick with the fact that her brother had been previously convicted of a crime, had been placed on probation, and was presently in jail pursuant to a motion to revoke probation that the then District Attorney had filed. The then District Attorney was one and the same person who prosecuted appellant's cause on behalf of the State of Texas.

We find that appellant's counsel before this Court correctly states the following:

Ms. Kirkpatrick did not know it was Mr. Chapman [the prosecutor in this cause] who filed the motion to revoke her brother's probation. R. V–299. It was never established that Ms. Kirkpatrick was aware that Mr. Chapman prosecuted her brother in the original theft case or that Ms. Kirkpatrick knew the presiding judge who heard her brother's case. R. V–297. There was no evidence that Ms. Kirkpatrick testified in her brother's trial, participated in her brother's offense, or that Ms. Kirkpatrick had any criminal record of her own. Other than the fact that the defendant in that collateral action was Ms. Kirkpatrick's brother, there was no proof of the type of personal relationship between Ms. Kirkpatrick and her brother. There was no proof that Ms. Kirkpatrick's brother had any relation to Appellant or the cattle theft. Ms. Kirkpatrick's brother was not a witness in appellant's trial. (Page 3, Appellant's Brief on Discretionary Review.)

The record also reflects that the witness acknowledged her brother's troubles with the law, but denied any animus or ill feelings toward the State or the then District Attorney as a result thereof.

On direct appeal, the State argued, inter alia, that "Certainly given the circumstances herein this *possible* personal prejudice against this prosecutor and this Trial Court was a proper area to explore with this witness. The rule has long been that it is permissible to show that a witness has sympathy with lawbreakers. *Daniel v. State*, [95 Tex.Cr.R. 649] 255 SW 444 [ (1923) ] and *Bing v. State*, [103 Tex.Cr.R. 272] 280 SW 827 [ (1926) ]." (Page 12 of appellee's brief on appeal.) (Our emphasis.)

The court of appeals agreed with this general argument and, merely stating another general rule, held: "The State, however, is entitled to show interest and bias of a witness, although it might involve

other offenses", citing *Bing v. State*, supra, as its authority.

■ We agree with the court of appeals that the general rule is that the State is clearly entitled to show any bias a defense witness might have against the State or the prosecutor. However, we find that when a prosecutor attempts to establish bias on the part of the witness against the State or its prosecutor, through a relationship with a third person, such as a relative of the witness, the State must first establish that because of the relationship the witness actually has a bias against the State or the prosecutor, and simply because a witness's relative might have had in the past or has in the present problems with the law is insufficient, standing alone, to show bias against the State or the prosecutor. A good example of this is found in *Bing*, supra, where the evidence reflected that the defendant's witness had employed the attorneys who represented the defendant, and the evidence also reflected that the lawyers were on retainer to represent the defendant and others of his ilk in the business of manufacturing and selling illicit intoxicating liquor. This Court held that this evidence was admissible to show the witness's interest in the outcome of the case against the defendant in that cause.

The general rule is that either party is entitled, subject to reasonable restrictions placed by the trial judge, to show any relevant fact which would or might tend to establish ill feeling, bias, motive, interest or animus on the part of any witness testifying against him. E.g., *Steve v. State*, 614 S.W.2d 137 (Tex.Cr.App.1981); *Green v. State*, 676 S.W.2d 359 (Tex.Cr.App.1984).

However, when it comes to the prosecutor impeaching a defense witness whose relative or relatives might have had or has problems with the law, we find and hold that before such becomes admissible evidence the State must first establish that there is some causal connection or relationship between the relative's problems and the witness' testimony at the accused's trial. We find the crucial question that must be answered in that instance is whether the witness is testifying against the State be-

cause of his relative's problems with the law, and for no other reason. E.g., *Coleman v. State*, 545 S.W.2d 831 (Tex.Cr.App. 1977) (Held, evidence that a State's witness has filed other charges against the defendant is admissible for the purpose of showing the animus of the witness). Cf. *Smith v. State*, 106 Tex.Cr.R. 202, 291 S.W. 544, 545 (1927) (Held, it is not necessary that a predicate be laid that the witness himself is biased toward the defendant before evidence which would create bias is introduced.) We do not and need not decide today whether this predicate rule of law should be applied to the defendant who desires to impeach a State's witness with similar type evidence.

Notwithstanding what we have stated, we observe that in *Carroll v. State*, 397 S.W.2d 82 (Tex.Cr.App.1966), this Court declined to approve permitting the defendant in that cause to impeach a State's witness, a police officer, with the fact that his son had been charged with committing several felony offenses, and it was *alleged* by the defendant that the prosecuting attorney had dismissed the charges before the defendant's trial. The officer testified that he had no personal reason for testifying for the State and against the defendant. Thus, because the defendant did not establish any connection or relationship between the charges that had been filed against the witness's son, this Court held that this testimony was not admissible impeaching evidence.

We do not retreat today from the general rule that exposing a witness's motivation to testify either for the accused or for the State, or against the accused or against the State, is a proper and important purpose of cross-examination. In exercising this right, either party is allowed great latitude to show any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness. The trial judge's discretion in this area is, though broad, not without limits. See, for example, *Hurd v. State*, 725 S.W.2d 249 (Tex.Cr.App.1987).

In this instance, we are concerned solely with the situation where the prosecutor,

without first establishing the relevancy of such testimony, over objection cross-examines a defense witness about her brother's troubles with the law. Cf. *Carmona v. State*, 698 S.W.2d 100 (Tex.Cr.App.1985).

■ We find and hold that where the prosecutor desires to impeach a defense witness with evidence that a relative or relatives of his had or is presently having problems with the law he must first establish that such is relevant to the case; otherwise it should always be excluded. E.g., 62 *Tex.Jur.2nd* 159, Witnesses, § 223. Also see *Graham v. State*, 125 Tex.Cr.R. 531, 69 S.W.2d 73 (1934); *Littlejohn v. State*, 273 S.W. 864 (Tex.Cr.App.1925); *Carroll v. State*, supra; and *Murphy v. State*, 587 S.W.2d 718 (Tex.Cr.App.1979); *Cox v. State*, 157 Tex.Cr.R. 51, 246 S.W.2d 474 (1952); *Farley v. State*, 94 Tex.Cr.R. 106, 249 S.W. 491 (1923); *Jackson v. State*, 44 Tex.Cr.R. 259, 70 S.W. 760 (1902): *Lee v. State*, 167 Tex.Cr.R. 555, 321 S.W.2d 577 (1959); *Nowlin v. State*, 507 S.W.2d 534 (Tex.Cr.App.1974); *Hampton v. State*, 92 Tex.Cr.R. 441, 244 S.W. 525 (1922); *Wallace v. State*, 82 Tex.Cr.R. 588, 200 S.W. 407 (1918); *Payne v. State*, 93 Tex.Cr.R. 595, 249 S.W. 470 (1923); *Grohoske v. State*, 121 Tex.Cr.R. 352, 50 S.W.2d 310 (1932); *Harrell v. State*, 153 Tex.Cr.R. 141, 218 S.W.2d 466 (1949); *Poulter v. State*, 72 Tex.Cr.R. 140, 161 S.W. 475 (1913); *Story v. State*, 107 Tex.Cr.R. 266, 296 S.W. 296 (1927); *Nevil v. State*, 143 Tex.Cr.R. 200, 157 S.W.2d 884 (1942); and *United States v. Ochoa*, 609 F.2d 198 (5th Cir.1980).

In this instance, the defense witness's brother was not a witness for appellant, it was not established by the prosecutor that his problems with the law were connected to appellant or his case, nor was any specific connection ever established that might have shown that his troubles with the law were relevant and material to appellant's case.

"Relevant evidence" is usually defined to mean the following: It is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401, Tex.R.Crim.Evid. By this definition, the testimony about the defense witness's brother was clearly irrelevant and immaterial to appellant's case.

Given what we have stated, we find that we are in general agreement with what appellant's present attorney states in his brief on discretionary review, at pages 13 and 14:

That Ms. Kirkpatrick's brother is a criminal has no probative value concerning her bias or motive, without proof that her brother somehow influenced her. Its probative value was surely outweighed by the undue prejudice of the jury, the embarrassment and harassment of the witness, and the misleading and confusing of the jury. Courts historically reject evidence impeaching a witness through relatives or associates. A relative's bad character, criminal charges and conviction, and bias or motive are not admissible to impeach a witness. Even the bad acts of a witness are not admissible unless V.A.C.C.P. 38.29 is satisfied, except in very rare instances where there is a direct, compelling connection between the witness' acts and the defendant or the case at hand. That a person has had criminal problems does not by itself show bias or motive. The State's argument that it can prove bias against the prosecutor was long ago rejected by this Court. The impeachment Appellant complains of injured him, because an alibi witness cannot be discredited without the complete ruination of the defendant. The evidence not only improperly attacked his alibi and his personal character, it also helped convince the jury that probation was inappropriate, having been unsuccessful in the case of Ms. Kirkpatrick's brother."

Therefore, the trial judge clearly erred in admitting the witness's testimony concerning her brother's problems with the law and the court of appeals also erred in affirming the decision of the trial judge.

We must next and finally decide whether the error was harmless to appellant. We find that it was not.

In determining whether the error was harmless, the test is not whether a conviction could have been had without the improperly admitted evidence, or that the punishment that was assessed could not have been assessed without the improperly admitted evidence, but, instead, is whether there is a reasonable possibility that the evidence might have contributed to the conviction or affected the punishment. See, for example, *Graham v. State,* 710 S.W.2d 588 (Tex.Cr.App.1986); *Self v. State,* 709 S.W.2d 662 (Tex.Cr.App.1986); *English v. State,* 647 S.W.2d 667 (Tex.Cr.App.1983); *Prior v. State,* 647 S.W.2d 956 (Tex.Cr. App.1983); *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985); *Johnson v. State,* 660 S.W.2d 536 (Tex.Cr.App.1983).

Given the fact that appellant's defense was alibi, the fact that the error concerned one of appellant's alibi witnesses, and the fact that although appellant was eligible for probation the jury assessed the maximum possible punishment for the offense, we are unable to state that there is a reasonable possibility that the inadmissible evidence did not contribute either to the jury finding him guilty or assessing the maximum possible punishment.

The judgments of the court of appeals and the trial court are reversed and the cause remanded to the trial court.

ONION, P.J., and DAVIS, McCORMICK and WHITE, JJ., concur in the result.