**Opinion filed May 31, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00136-CR

_____

## ALFREDO VILLARREAL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR23822**

### M E M O R A N D U M   O P I N I O N

The jury convicted Alfredo Villarreal of the second-degree felony offense of aggravated assault with a deadly weapon and assessed his punishment at confinement for a term of ten years in the Institutional Division of the Texas Department of Criminal Justice. TEX. PENAL CODE ANN. § 22.02 (West 2019). Appellant brings two issues on appeal. Appellant contends that the trial court abused its discretion when it (1) limited his cross-examination of the victim regarding the victim's parole status and (2) allowed an in-court demonstration. We affirm.

## Background Facts

Appellant was charged with the offense of aggravated assault with a deadly weapon for stabbing Jose Rivera with a knife. During opening statements, Appellant asserted that he acted in self-defense because Rivera threatened to kill him, tried to break into the house where Appellant lived, and pulled a knife out of his pocket. Conversely, the prosecutor argued that Appellant stabbed Rivera four times and that Appellant's actions were not justified.

Rivera testified that, on the night of the assault, he and his girlfriend, Noraida Hernandez, went to a barbeque restaurant. Rivera drank several beers before he and Hernandez subsequently went to a bar. At the bar, they conversed with Appellant, Arturo Villarreal (Appellant's son), Brian Evans, and Donna Warren. Rivera drank two more beers. Rivera later dropped off Appellant near Appellant's pickup, and then Rivera drove Hernandez, Warren, Evans, and Arturo to Evans's house. Appellant met them at Evans's house, where Appellant lived at the time. Rivera testified that, when they arrived at Evans's house, Evans tried to kick in the front door because he could not find his key. Eventually, Evans located his key and unlocked the door.

Subsequently, Arturo and Appellant started to argue outside. Rivera testified that Hernandez tried to separate Arturo and Appellant, but Appellant pushed her and called her "a b---h." Appellant apologized, and the altercation ended. Rivera then went to his pickup to look for his cigarettes. When Rivera leaned into his pickup, he saw Appellant coming up behind him. Rivera testified that he turned around and that Appellant stabbed him. Although Rivera had a knife that night, Rivera testified that he did not try to defend himself because he was bleeding and his legs were cramping.

Hernandez testified that, on the evening of the alleged assault, Appellant pushed her when she tried to separate Arturo and Appellant. The fight stopped;

Appellant apologized; and she and Rivera decided to leave. Hernandez testified that she saw Appellant stab Rivera. However, Hernandez admitted that it was "pitch-dark" and that she was intoxicated.

Evans and Alexander Villarreal, Appellant's other son, testified that, during the fight, Hernandez fell when Appellant tried to prevent her from hitting Appellant. According to Alexander and Evans, Appellant and Evans went inside the house and locked the door. Rivera then threatened to kill Appellant for pushing Hernandez. Evans claimed that he could hear someone trying to kick in the door, and Alexander asserted that he saw Rivera kicking the door as Alexander was leaving the house. Both Alexander and Evans heard a window break. Evans also testified that, later that evening, Appellant admitted that he stabbed Rivera.

Brownwood Police Officer Gary Villalpondo testified that he was dispatched to Evans's house for a civil dispute. When he arrived, he located Rivera but was not able to locate Appellant or Evans. Donna Vogel, the paramedic who treated Rivera at the scene, testified that she observed multiple stab wounds. According to Vogel, the stab wounds on Rivera's back were so deep that they could have gone "into the lungs," and one of the stab wounds on the front of his body was "six to ten inches" in length.

Brownwood Detective Robert Lee testified that he collected evidence and observed the scene. Detective Lee also observed Rivera's injuries, including the wounds on Rivera's back. Detective Lee testified that he compared the shoes Rivera wore that evening with shoe prints found on Evans's front door; he determined that both appeared to have the same tread pattern. Because Detective Lee believed that Rivera might have kicked Evan's door, Detective Lee suspected that Appellant might have acted in self-defense. However, when he interviewed Appellant the next day, Detective Lee did not observe any defensive wounds on Appellant.

Detective Lee further testified that there was no evidence, other than the shoes, that supported a potential claim of self-defense.

*Analysis*

In his first issue, Appellant contends the trial court abused its direction when it limited Appellant's cross-examination of Rivera regarding Rivera's parole status. Appellant asserts that Rivera's parole status was admissible to show Rivera's vulnerable relationship with the State and potential bias in favor of the State.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). "A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement." *Id.* (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).

The Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. U.S. CONST. amend. VI; *Johnson*, 490 S.W.3d at 909. "The main purpose behind the Confrontation Clause is to secure for the opposing party the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Johnson*, 490 S.W.3d at 909 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). The Sixth Amendment right to cross-examine a witness allows a party to attack the general credibility of that witness or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). However, a trial judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of an opportunity for effective cross-examination. *Johnson*, 490 S.W.3d at 909 (citing *Johnson v. State*, 433 S.W.3d 546, 552 (Tex. Crim. App. 2014)). A trial judge retains wide latitude to

impose reasonable limits on such cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, marginally relevant evidence, or where the subject of the examination has been exhausted. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

A defendant may elicit, on cross-examination, facts intended to demonstrate a witness's vulnerable relationship with the State or to show a witness's bias. TEX. R. EVID. 613(b); *Carroll v. State*, 916 S.W.2d 494, 500 (Tex. Crim. App. 1996). "Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). Parties are allowed great latitude to show any relevant fact that would establish or might tend to establish ill feeling, bias, motive, or animus on the part of the witness. *Id.*; *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987).

The right to cross-examine is not unqualified. *Johnson*, 490 S.W.3d at 909. "A trial judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an opportunity for effective cross-examination.'" *Id.* (quoting *Johnson*, 433 S.W.3d at 552). "The defendant is not entitled to 'cross-examination that is effective in whatever way, and to whatever extent,' he might wish." *Id.* (quoting *Johnson*, 433 S.W.3d at 552).

Appellant requested permission from the trial court during a bench conference to question Rivera about his prior conviction for aggravated assault in 2006 and his parole status. The trial court allowed Appellant to cross-examine Rivera about the prior conviction. Specifically, the trial court permitted Appellant to establish that Rivera pleaded guilty in 2006 to the offense of aggravated assault with a deadly weapon, a knife, and that he was sentenced to fourteen years in prison as a result of

that conviction. However, the trial court did not permit Appellant to ask Rivera about his parole status.

Appellant made an offer of proof outside the presence of the jury regarding Rivera's parole status by asking Rivera the following questions:

Q: So from 2006 until 2012, you were in prison?

A: Yes.

Q: Were you on parole in January of 2015 at the time of this incident?

A: Yes.

Q: Do you understand as a condition of your parole you're prohibited from carrying a knife?

A: Now I know it. At that time, I didn't.

Q: Do you understand that as a condition of your parole you're prohibited from consuming alcohol?

A: Yes.

Q: You understand as a condition of your parole you're prohibited from driving while you're intoxicated?

A: Yes.

Q: . . . [D]id your parole officer find out about the fact that you were drinking?

A: Yes.

Q: Who told your parole officer?

THE COURT: Okay. I'm going to stop you here. . . . I'm not going to allow all these questions in front of the jury at this point.

Appellant argued that Rivera's parole status was relevant to show Rivera's motive to lie and to show lack of mistake. The trial court denied Appellant's request but stated that "it might be deemed to be relevant or admissible later." Appellant did not object that this ruling violated his rights under the Confrontation Clause, nor did he renew his request later during the trial.

6

Beyond the fact that a witness has been convicted of a crime, the details of the offense are not admissible. *Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986); *Andrews v. State*, 429 S.W.3d 849, 858 (Tex. App.—Texarkana 2014, pet. ref'd). Accordingly, Appellant was not permitted to inquire into the circumstances surrounding Rivera's conviction in 2006. *See Mays*, 726 S.W.2d at 953. However, Appellant contends that the details of Rivera's parole were admissible to show his bias in favor of testifying for the State. *See Andrews*, 429 S.W.3d at 858–59 (addressing a similar contention). "The proponent of evidence to show bias must show that the evidence is relevant." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). "[A] showing must be made that the witness 'had the expectation that he would be rewarded for testimony favorable to the State or punished for testimony that was unfavorable to the State.'" *Andrews*, 429 S.W.3d at 858–59 (quoting *Woods*, 152 S.W.3d at 112).

As was the case in *Andrews*, there is no evidence tending to show that Rivera's testimony had an effect on his actual parole status. *Id.* at 859. There was no evidence that Rivera expected to be rewarded for testimony favorable to the State or punished for testimony unfavorable to the State. *Id.* Rivera admitted to the conduct that violated his parole—drinking, driving after drinking, and possessing a knife. These admissions by Rivera would be detrimental to his parole status. Accordingly, there is no logical connection between Rivera's vulnerable relationship or potential bias as a parolee and his motive to testify in the manner that he did at trial. *See Carpenter*, 979 S.W.2d at 634–35; *see also Irby*, 327 S.W.3d at 147–48. Furthermore, defense counsel was permitted to ask Rivera, in the jury's presence, if Rivera was aware that he could be charged with criminal mischief and burglary for attempting to kick down the door and for breaking the window. Defense counsel was also permitted to question Rivera, in the jury's presence, about his motive to lie because of these potential charges that could be filed against him. This line of questioning explored

7

a potential bias for Rivera to testify in the manner that he did at trial in order to avoid criminal prosecution. We conclude that the trial court did not abuse its discretion by restricting Appellant from questioning Rivera about his parole status.

Moreover, there is no showing of harm with respect to the trial court's ruling. Defense counsel stated during closing argument that Rivera was on parole at the time of the assault. Defense counsel reached this assumption by arguing to the jury that Rivera's fourteen-year sentence had not been completed prior to the underlying trial. Based on this assumption, defense counsel argued that Rivera's actions during the incident at issue were violations of the conditions of Rivera's parole. Defense counsel further argued that Rivera had a motivation to lie in order to avoid being sent back to prison. The prosecutor did not object to defense counsel's references to Rivera's parole status during closing argument. Accordingly, Appellant was still able to present an argument of bias concerning Rivera's parole status. We overrule Appellant's first issue on appeal.

In his second issue, Appellant contends that the trial court erred when it allowed the prosecutor and Detective Lee to engage in an in-court demonstration to refute Appellant's theory of self-defense. Appellant asserts that the demonstration violated TEX. R. EVID. 602 because Detective Lee lacked personal knowledge of the circumstances of the assault. Appellant argues that, because Detective Lee lacked such personal knowledge, his testimony could not support the demonstration. Appellant also asserts that the demonstration was not substantially similar to what the State believed had occurred.

As we stated above, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Johnson*, 490 S.W.3d at 908 (citing *Tillman*, 354 S.W.3d at 435). Although Appellant contends that the demonstration was not substantially similar to what the State believed had occurred, Appellant never presented this particular argument to the trial court. Thus, he has not preserved

it for appeal. *See* TEX. R. APP. P. 33.1(a) (requiring that a complaint be made to trial court by timely specific objection in order to preserve issue for appeal). Accordingly, we focus our analysis on Appellant's Rule 602 objection.

The prosecutor requested permission from the trial court to engage in an in-court demonstration with Detective Lee to show that Rivera's injuries could not have been the result of a face-to-face knife fight. The prosecutor described the demonstration that he wanted to do in the following manner: "Detective Lee and myself stand face to face, Detective Lee [with] a knife in his hand [will] reach around to the area where the wounds on the back were . . . as observed by Detective Lee in person." Appellant objected that the demonstration was not based on Detective Lee's personal knowledge. Although the trial court allowed the demonstration, the record does not contain a description of the demonstration beyond the prosecutor's proffer.

Appellant correctly states that a witness may not testify to a matter unless the evidence shows that the witness has personal knowledge of the matter. TEX. R. EVID. 602; *see Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (citing *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994)). However, "Rule 602 is not the primary guidepost courts use to determine if a demonstration was appropriately admitted." *Wright v. State*, 178 S.W.3d 905, 918 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The primary consideration for permitting an in-court demonstration is the requirement that it be substantially similar to the event it depicts. *Id.*; *see Valdez v. State*, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989); *Cantu v. State*, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987). The conditions of the demonstration should be sufficiently similar to the event in question, but need not be identical, and dissimilarities go to weight and not to admissibility. *Valdez*, 776 S.W.2d at 168; *Cantu*, 738 S.W.2d at 255; *Wright*, 178 S.W.3d at 919.

A witness can have sufficient personal knowledge under Rule 602 if he has personal knowledge of key facts depicted in an in-court demonstration. *Wright*, 178 S.W.3d at 918. Here, Detective Lee surveyed the crime scene; talked to multiple witnesses, including Appellant; and observed the size, location, and severity of Rivera's wounds. Furthermore, Detective Lee could reasonably deduce any details not within his personal knowledge based on his investigation of the assault, his experience as a detective for over two years, and his training on different types of injuries and how they occur. *See id.* at 918–19 (citing TEX. R. EVID. 701); *See Osbourn*, 92 S.W.3d at 535 (stating that a witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations). Accordingly, the trial court did not abuse its discretion by determining that Detective Lee possessed sufficient personal knowledge to provide an in-court demonstration in this case. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

May 31, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.